**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 22-cv-01800-RM

THOMAS J. BARRACK, JR.,

     Plaintiff,

v.

UNITED STATES DEPARTMENT OF JUSTICE,

     Defendant.

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S EXPEDITED MOTION FOR
PRELIMINARY INJUNCTION (ECF NO. 2)**

---

Plaintiff Thomas J. Barrack, Jr. seeks the extraordinary remedy of a preliminary injunction to compel the U.S. Department of Justice's National Security Division (NSD) to produce certain documents responsive to a Freedom of Information Act (FOIA) request. Plaintiff persists in seeking this relief despite the fact that he did not make the request; another individual, Sohil Khurana did. Moreover, even if Plaintiff had standing to pursue his motion, which he does not, it is now moot: while NSD initially issued a response that neither confirmed nor denied the existence of responsive records, it has since decided to process the FOIA request. NSD has completed its search for responsive records, has initiated processing, and has already produced 16 of the 23 pages of responsive records to Mr. Khurana, subject to applicable FOIA exemptions, which is the relief Plaintiff seeks in his preliminary-injunction motion. Indeed, even Plaintiff's request to order NSD to complete processing Mr. Khurana's FOIA request within 10 days of this Court issuing a preliminary injunction may well be moot by the time this Court adjudicates the motion, since NSD has already completed the bulk of processing.

1

In any event, Plaintiff asks this court for a disfavored, mandatory injunction that circumvents FOIA's detailed procedural framework, despite failing to satisfy any of the elements required to obtain such relief. First, Plaintiff does not establish a likelihood of success on the merits of his claims because his Complaint should be dismissed at the threshold. For one, Plaintiff lacks standing because he did not submit the FOIA request at issue and the record shows that Mr. Khurana did not identify any association with Plaintiff when he filed the FOIA request. Further, Mr. Khurana failed to exhaust his administrative remedies by filing an administrative appeal of NSD's response to his FOIA request before Plaintiff filed this lawsuit. Second, and perhaps most critically, Plaintiff fails to establish irreparable harm absent relief. His asserted harms are purely speculative, lack concreteness, and are wholly unsupported by evidence. Finally, issuing a preliminary injunction here would harm the public interest and the balance of equities because it would disadvantage other FOIA requesters waiting in the queue and amount to issuing an advisory opinion. And to the extent Plaintiff's request for NSD to complete processing within 10 days remains live, it would risk inadvertent disclosure of statutorily exempt government information, which would harm the public interest. Plaintiff's preliminary-injunction motion should therefore be denied, as should his alternative request to merge his motion with a trial on the merits.

## LEGAL BACKGROUND

### I.        Freedom of Information Act

FOIA provides a means for the public to access federal government records, subject to certain exemptions. *See* 5 U.S.C. § 552; *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1225 (10th Cir. 2007). Upon receipt of a properly submitted request that "reasonably describes" the records

sought, *id.* § 552(a)(3)(A), an agency generally must determine within twenty working days[1] "whether to comply with such request" and then immediately notify the requestor of its determination and the reasons therefor. *Id*. § 552(a)(6)(A)(i). If an agency fails to make a determination within twenty working days and immediately notify the requestor, the requestor "shall be deemed to have exhausted his administrative remedies with respect to such request [.]" *Id*. § 552(a)(6)(C)(i). However, "[w]here an agency has entirely failed to respond to a request within the statutory deadlines, if the agency replies before the requester files suit, the exhaustion requirement still applies." *Lowe v. Drug Enf't Admin.*, No. CIV.A. 06-1133 (CKK), 2007 WL 2104309, at *4 (D.D.C. July 22, 2007) (citing *Judicial Watch v. Rossotti,* 326 F.3d 1309, 1310 (D.C. Cir. 2003)); *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 64 (D.C. Cir. 1990) ("[O]nce the agency responds to the FOIA request, the requester must exhaust his administrative remedies before seeking judicial review.").

"A response is sufficient for purposes of requiring an administrative appeal if it includes the agency's determination of whether or not to comply with the request; the reasons for its decision; and notice of the right of the requester to appeal to the head of the agency if the initial agency decision is adverse." *Nat'l Sec. Counselors v. CIA*, 931 F. Supp. 2d 77, 95 (D.D.C. 2013); *see also Machado Amadis v. DOJ*, 388 F. Supp. 3d 1, 12 (D.D.C. 2019), *aff'd sub nom. Machado Amadis v. DOS*, 971 F.3d 364 (D.C. Cir. 2020) (An agency response to a FOIA request that "neither confirm[s] nor den[ies] the existence" of responsive records suffices as a determination under Section 552(a)(6)(C)(i).").

---

[1] The twenty days excepts "Saturdays, Sundays, and legal public holidays." *Id*. § 552(a)(6)(A)(i).

## II.     Foreign Agent Notification Requirement Under 18 U.S.C. § 951

The FOIA request underlying Plaintiff's suit seeks records submitted under 18 U.S.C. § 951. That statute generally requires agents of foreign governments to notify the Attorney General before acting on behalf of the foreign government. 18 U.S.C. § 951(a). Proper notification can take four forms, depending on the situation. First, an agent may notify the Attorney General by addressing a letter or facsimile to the attention of NSD. 22 C.F.R. § 73.3(a). However, if the agent is engaged in law enforcement or judicial proceedings, the letter or facsimile should be directed to the attention of Interpol-United States National Central Bureau or DOJ's Office of International Affairs in its Criminal Division, respectively. 28 C.F.R. § 73.3(b), (c). Finally, if an agent properly registers with the federal government in accordance with the Foreign Agents Registration Act (FARA), 22 U.S.C. § 611 *et seq*., that registration suffices as a notification under § 951. 28 C.F.R. § 73.3(e); *see also United States v. Rafiekian*, 991 F.3d 529, 535 n.6 (4th Cir. 2021).

## PROCEDURAL HISTORY

More than a year ago, on July 16, 2021, federal prosecutors with the Eastern District of New York and the NSD filed an indictment against Plaintiff and other co-defendants, alleging, among other things, that Plaintiff violated 18 U.S.C. § 951 by acting as an unregistered agent of a foreign government without prior notification to the Attorney General. *See* Indictment, *United States v. Barrack*, 1:21-cr-371 (E.D.N.Y.), ECF No. 5. On January 5, 2022, the court set Plaintiff's trial to begin following jury selection on September 7, 2022. Minute Entry of Jan. 5, 2022, *Barrack*. On July 15, 2022, the court delayed the beginning of trial until September 19, 2022. Scheduling Order of July 15, 2022, *Barrack*.

On May 5, 2022, nearly a year after Plaintiff's initial indictment and more than five months

after Plaintiff's trial date was initially scheduled, Sohil Khurana, a policy advisor and associate at the law firm Brownstein Hyatt Farber Schreck, filed a FOIA request with the NSD, seeking: (1) any notification of registration as an agent of a foreign government under 18 U.S.C. § 951 by an individual or entity in each case in the last ten years; (2) a list of each individual or entity currently registered with DOJ under 18 U.S.C. § 951; and (3) any notification of termination and re-notification following such termination under 18 U.S.C. § 951 for the past ten years. *See* Decl. of Kevin G. Tiernan ¶ 5, Ex. 1; *see also* Tiernan Decl. Ex. B. Mr. Khurana sought any such records that were submitted to NSD; Interpol-United States National Central Bureau; DOJ's Office of International Affairs, Criminal Division; or any employee or supervisor of those divisions, including the Attorney General of the United States. *See id.* At the time he submitted his request, Mr. Khurana did not identify any connection to Plaintiff or request expediting processing under 28 C.F.R. § 16.5(e). *See* Tiernan Decl. ¶ 5; *see also id.* Exs. A, B.

On June 8, 2022, NSD sent Mr. Khurana an acknowledgment of the FOIA request. *See* Tiernan Decl.) ¶ 7. On July 30, nearly two months after submitting his FOIA request, Mr. Khurana submitted a request for expedited processing of his FOIA request. *Id.* ¶ 8.

On July 8, 2022, NSD issued a response to Mr. Khurana's FOIA request that included what is known as a "*Glomar*" response.[2] *Id.* A *Glomar* response refuses to confirm or deny the existence of responsive records, because the existence or non-existence of such records is itself a fact whose disclosure would cause cognizable harm under, or otherwise implicate, FOIA exemptions. *Id.* In the final response, NSD explained that it maintains investigative and prosecutorial records

---

[2] The term "*Glomar* response" originates from a case involving a FOIA request about the "Glomar Explorer" submarine. *See Phillippi v. Central Intelligence Agency*, 546 F.2d 1009 (D.C. Cir. 1976).

pertaining to the subjects of NSD investigations, and that NSD interpreted the citation to 18 U.S.C. § 951 to implicate such records. *Id.* Ex. F. NSD further explained that to the extent Mr. Khurana was seeking information based on any 18 U.S.C. § 951 submissions that have not already been made public, NSD could neither confirm nor deny the existence of such records because the confirmation or denial would implicate FOIA Exemptions 6 and/or 7, which protect personal privacy. *Id.*. NSD also confirmed in the final response that it did not locate any responsive records that would not be covered by the *Glomar* response. *Id.* Finally, NSD alerted Mr. Khurana in the final response that to the extent that he sought registrations filed pursuant to the Foreign Agent Registration Act,[3] that information was publicly available. *Id.*

The *Glomar* response notified Mr. Khurana that he could submit an administrative appeal of the decision. *Id.*. To date, Mr. Khurana has not filed an administrative appeal of this decision. Tiernan Decl. ¶ 9. Instead, Plaintiff, Tom Barrack, filed this suit on July 21, 2022. Compl., ECF No. 1. That same day, Plaintiff filed a motion for a preliminary injunction, seeking for this Court to order NSD to "conduct a proper search under FOIA; properly respond to the May 5, 2022 FOIA request; and produce the requested materials within ten (10) days of the Court's entry of an order granting the Motion." Pl.'s Mot. for a Prelim. Inj. at 23 (Mot.), EF No. 2.

Upon re-review of its July 8, 2022 final response, NSD has decided to lift its initial *Glomar* response, process Mr. Khurana's FOIA request, and release all non-exempt, responsive material under FOIA to the requester. *See* Tiernan Decl. ¶ 10. NSD's search is complete, and the agency made an initial production on August 12, 2022, in which it withheld in full three pages of records

---

[3] Pursuant to 28 C.F.R. § 73.3(e), registration under FARA qualifies as a notification under 18 U.S.C. § 951.

under FOIA Exemption 7(E), released in part and withheld in part 13 pages of records under FOIA Exemption 4, and identified seven additional pages of records remaining to be processed upon receiving back interagency consultations. *Id.* ¶¶ 11–13.

## ARGUMENT

### I.    Standard of Review

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief.'" *New Mexico Dep't of Game & Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1245–46 (10th Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). A party seeking a preliminary injunction must establish four elements: "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.

A movant must meet an even higher standard if he seeks a preliminary injunction that is "specifically disfavored" in the Tenth Circuit. *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019). "Disfavored preliminary injunctions don't merely preserve the parties' relative positions pending trial. Instead, a disfavored injunction may exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win." *Id*.

To obtain a disfavored injunction, a movant "faces a heavier burden" on both the "likelihood-of-success-on-the merits and the balance of harms factors." *Free the Nipple*, 916 F.3d at 797. Specifically, he "must make a '*strong showing*' that these [factors] tilt in [his] favor." *Id.* (emphasis added). "Any preliminary injunction fitting within one of the disfavored categories must

be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004).

## II. Preliminary injunctive relief is generally not appropriate in FOIA cases.

Preliminary injunctive relief is generally not appropriate in FOIA cases, for a number of reasons. First, FOIA establishes its own specialized procedural framework controlling the processing of FOIA requests and procedures for FOIA litigation. *See, e.g.*, 5 U.S.C. § 552(a)(3)(A) (providing that a FOIA request must reasonably describe the records sought and must be filed in accordance with published rules and procedures); *id.* § 552(a)(4)(C) (requiring responsive filing within thirty days of service of a complaint). Courts should not casually sidestep this statutory framework through issuance of preliminary relief. Second, FOIA has its own statutory mechanism for seeking expedition, *see* 5. U.S.C. § 552(a)(6)(E), from which a requester can seek relief. That scheme should not be disregarded in favor of general emergency procedures.

In addition, preliminary relief in the FOIA context necessarily consists of a mandatory injunction altering the status quo, which is specifically disfavored in the Tenth Circuit. *Summum v. Pleasant Grove City*, 483 F.3d 1044, 1049 (10th Cir. 2007), *rev'd on other grounds sub nom. Pleasant Grove City, Utah v. Summum*, 555 U.S. 460 (2009). That is because preliminary injunctive relief would require specific action by the government instead of preserving the status quo that existed before Plaintiff filed this lawsuit—here, an order requiring a search of records responsive to, and accelerated processing of, Mr. Khurana's FOIA request. Mot. at 2; *Summum*, 483 F.3d at 1049; *see also Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1261 (10th Cir. 2005) ("We

characterize an injunction as mandatory if the requested relief affirmatively requires the nonmovant to act in a particular way.") (internal quotation marks omitted).

Finally, preliminary injunctive relief is not intended to provide plaintiffs with a means to bypass the litigation process and achieve rapid victory. As Plaintiff has indicated, that is essentially what he seeks here: an injunction that Defendant "conduct a proper search under FOIA; properly respond to the May 5, 2022 FOIA request, and produce the requested materials within ten (10) days." Pls.' Mot. for Prelim. Inj. at 23; *compare with* Compl., Prayer for Relief (1)–(2). Plaintiff's motion thus should be denied as a mere tactic to circumvent the standard litigation process, whereby the agency makes a determination on Mr. Khurana's FOIA request and, assuming Plaintiff's complaint is not otherwise be dismissed for lack of standing and failure to exhaust, the parties brief any substantive dispute over the agency's response on summary judgment. *See Daily Caller*, 152 F. Supp. 3d at 6–7 (noting that "in seeking a preliminary order requiring the State Department to process fully the plaintiff's outstanding FOIA requests and produce all responsive non-exempt documents within twenty business days, the plaintiff essentially requests the full relief it seeks in filing its underlying Complaint"). *See, e.g.*, *Long v. U.S. Dep't of Homeland Sec.*, 436 F. Supp. 2d 38, 44 (D.D.C. 2006) (denying motion for preliminary injunction to compel processing within twenty days, and explaining that "[t]he government has not yet had a chance to review its files, prepare and file a dispositive motion, and provide the Court the information necessary to make a decision on any material that might be subject to an exemption"); *Allied Progress v. Cons. Fin. Prot. Bureau*, 2017 WL 1750263, at *1 (D.D.C. May 4, 2017) (denying request for a preliminary injunction mandating expedited processing and production where requester failed to show a likelihood of success on the merits and irreparable harm); *Elec. Privacy Info. Ctr. v. DOJ*,

No. 1:03-cv-2078, Order at 1 (D.D.C. Oct. 20, 2003), ECF No. 4 (denying a request "'enjoining defendant DOJ from continuing to deny plaintiff expedited processing of plaintiff's [FOIA] request'" because such relief "would effectively grant all the relief plaintiff seeks"), *vacated as moot*, 2004 WL 2713119 (D.C. Cir. Nov. 24, 2004). The Court should similarly deny Plaintiff's preliminary-injunction motion, and not reward him for improperly requesting emergency relief.

**III.   Plaintiff cannot show a likelihood of success on the merits.**

In any event, Plaintiff has not met his burden to make "a strong showing" that he is substantially likely to succeed on the merits of his case, which warrants denial of the preliminary-injunction motion on this basis alone. *See Free the Nipple*, 916 F.3d at 798.

**A.   Plaintiff does not have standing to pursue his claims.**

To establish standing, "a plaintiff must demonstrate that (1) he or she has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision." *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003) (cleaned up). In the context of a FOIA claim, this requires that a plaintiff show "that they sought and were denied specific agency records." *Public Citizen v. DOJ*, 491 U.S. 440, 449 (1989) (citations omitted); *see also McDonnell v. United States*, 4 F.3d 1227, 1238 (3d Cir. 1993). Therefore, if a plaintiff has not actually made a FOIA request, he does not have standing to challenge the response to the request. *Smallwood v. DOJ*, 266 F. Supp. 3d 217, 220 (D.D.C. 2017) (citations omitted); *Osterman v. U.S. Army Corps of Eng'rs.*, 2014 WL 5500396, at *2 (W.D. Wash. Oct. 30, 2014) ("the individual who made the FOIA request is the only individual who has standing to challenge an agency's response to that request"). This is because "a person whose name does not appear on a request for records has not made a formal request for documents

within the meaning of the statute. Such a person, regardless of his or her personal interest in disclosure of the requested documents, has no right to receive . . . the documents." *McDonnell*, 4 F.3d at 1236–37 (plaintiff did not have standing to pursue FOIA claim where his name did not appear on the request for records).

When an attorney makes a FOIA request on behalf of a client, "the attorney must *clearly indicate* that it is being made on behalf of the client to give that client standing to bring a FOIA challenge." *Smallwood*, 266 F. Supp. 3d at 220 (cleaned up) (emphasis added); *Three Forks Ranch Corp. v. Bureau of Land Mgmt.*, 358 F.Supp.2d 1, 3 (D.D.C. 2005) (citations omitted) ("courts have found that an attorney must adequately identify that he is making the FOIA request for his client in order for the client to have standing to pursue a FOIA action"). "[C]ourts routinely dismiss FOIA suits where an attorney filed the initial request without indicating that the request was made on behalf of the plaintiff." *Smallwood*, 266 F. Supp. 3d at 220 (collecting cases); *accord Unigard Ins. Co. v. Dep't of Treas.*, 997 F. Supp. 1339, 1342 (S.D. Cal. 1997); *Fieger v. FEC*, 690 F. Supp. 2d 644, 650 (E.D. Mich. 2010). This is so even where a subsequent communication indicates that the request was made on behalf the plaintiff. *See Smallwood*, 266 F. Supp. 3d at 221 (plaintiff did not have standing to pursue FOIA claim where initial request did not mention him, even though administrative appeal of the denial of the request stated that the initial request had been made on behalf of plaintiff); *cf. McDonnell*, 4 F.3d at 1238 n.6 (passing reference to plaintiff in follow-up communication to agency "did not sufficiently identify him with the person making the request to confer on him standing to challenge the denial of the request"); *but see Sierra Club v. EPA*, 75 F. Supp. 3d 1125, 1139–40 (N.D. Cal. 2014). Otherwise, "there would be nothing to prohibit a party from piggy-backing onto an existing request at any point in the administrative and/or judicial

process. Such was not the intent of Congress." *Osterman*, 2014 WL 5500396, at \*4 (citing *McDonnell*, 4 F.3d at 1237).

Here, Mr. Khurana submitted the FOIA request that is the subject of this lawsuit. ECF No. 2-1. The request did not mention Plaintiff or indicate in any way that Mr. Khurana was requesting the records on behalf of a client. Mr. Khurana himself sent all follow-up correspondence related to the FOIA request, referring to it at times as "*my* FOIA request," and making statements such as "*I* have not yet received a response." *See, e.g.*, ECF No. 2-3 at 2; ECF No. 2-4 at 1, 2 (emphasis added). NSD therefore consistently treated the FOIA request as having been submitted solely by Mr. Khurana, addressing all communications concerning the request to him. *See* ECF No. 2-2 at 1; ECF No. 2-5; ECF No. 2-7 at 3; ECF No. 2-8; ECF No. 2-9.

Indeed, in the 18 pages of correspondence between Mr. Khurana and DOJ that are attached to the Motion, only one communication even mentions Plaintiff. Mr. Khurana sent the communication almost two months after he submitted the initial FOIA request in an attempt to obtain expedited processing of the request. *See* ECF No. 2-7 at 2–3. The communication generally describes the criminal proceedings against Plaintiff as justification for expedited processing. *See id.* However, the communication still does not identify Plaintiff as the party making the FOIA request, nor does it specifically state that Mr. Khurana submitted the FOIA request on behalf of Plaintiff. *See id.* It is therefore insufficient to give Plaintiff standing to challenge NSD's FOIA response. *See McDonnell*, 4 F.3d at 1238 n.6. Plaintiff, therefore, cannot succeed on the merits because he lacks standing to challenge NSD's response to the FOIA request.

**B.    Plaintiff failed to exhaust his administrative remedies.**

Plaintiff also cannot succeed on the merits because he failed to exhaust his administrative

remedies. "Generally, a plaintiff must exhaust her administrative remedies under FOIA before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Hull v. IRS*, 656 F.3d 1174, 1179 (10th Cir. 2011) (cleaned up). Although a failure to exhaust administrative remedies under FOIA is not a jurisdictional prerequisite, "it is well accepted that FOIA's administrative scheme favors treating failure to exhaust as a bar to judicial review." *Id.* at 1181–82 (cleaned up).

There are two ways for a requester to exhaust administrative remedies under the FOIA: (1) actual exhaustion, 5 U.S.C. § 552(a)(6)(A)(i), and (2) constructive exhaustion, *id.* § 552(a)(6)(C)(i). Actual exhaustion occurs when a requester appeals a negative determination to the agency. *See id.* § 552(a)(6)(A)(i); 39 C.F.R. § 265.8(d) ("Before seeking judicial review of a [Postal Service] component's adverse determination, a requester generally must first submit a timely administrative appeal."). A requester constructively exhausts administrative remedies if the agency fails to make a determination on the request within twenty working days. *Id.* § 552(a)(6)(C)(i). Neither has occurred here. That is because despite the fact that Defendant did not make a determination on Mr. Khurana's FOIA request within 20 working days, it nonetheless issued a final response to the request on July 8, 2022, before Plaintiff filed suit, and neither Plaintiff nor Mr. Khurana filed an administrative appeal of that decision.[4] Tiernan Decl. ¶ 8. "Where an

___

[4] Defendant's subsequent decision to lift the *Glomar* response it issued on July 8, 2022, has no bearing on the exhaustion analysis. Failure to exhaust is assessed at the time the requester brings suit. *See Oglesby*, 920 F.2d at 61–62 ("Courts have consistently confirmed that the FOIA requires exhaustion of this appeal process *before* an individual may seek relief in the courts.") (emphasis added). "The exhaustion requirement serves multiple purposes, including providing an agency the opportunity to 'review its initial determination, apply its expertise, correct any errors, and create an ample record in the process.'" *Nat'l Sec. Counselors v. CIA,* 931 F.Supp.2d 77, 99–100 (D.D.C. 2013). That Defendant has now reviewed its initial determination and decided to change its approach to Mr. Khurana's FOIA request merely demonstrates "the purposes of exhaustion,

agency has . . . failed to respond to a request within the statutory deadlines, if the agency replies before the requester files suit, the exhaustion requirement still applies." *Lowe v. Drug Enf't Admin.*, No. CIV.A. 06-1133 (CKK), 2007 WL 2104309, at *4 (D.D.C. July 22, 2007) (citing *Judicial Watch v. Rossotti,* 326 F .3d 1309, 1310 (D.C. Cir. 2003); *Oglesby,* 920 F.2d at 64–65). Plaintiff's preliminary-injunction motion should be dismissed on this basis alone.[5]

### C. Defendant's processing of records responsive to Plaintiff's request renders Plaintiff's request for emergency relief moot.

NSD has lifted its initial *Glomar* response, begun processing Mr. Khurana's FOIA request, and will release all non-exempt, responsive material under FOIA. Tiernan Decl. ¶ 10. It has already completed its search and made an initial production on August 12, 2022. *Id.* ¶ 10, 13. Thus, NSD has already begun to provide the relief sought in Plaintiff's motion for a preliminary injunction.[6] *See* Mot. at 23. Plaintiff's motion is therefore moot, at least as a prudential matter.

"Courts generally invoke this doctrine in the context of a request for preliminary injunction, where it seems that the defendant (usually the government) is in the process of changing its policies

---

namely, 'preventing premature interference with agency processes, ... afford[ing] the parties and the courts the benefit of [the agency's] experience and expertise, ... [or] compil[ing] a record which is adequate for judicial review.'" *Ryan v. Bentsen*, 12 F.3d 245, 247 (D.C. Cir. 1993) (quoting *Weinberger v. Salfi,* 422 U.S. 749, 765 (1975)).

[5] As Plaintiff acknowledges, DOJ's Office of Information Policy (OIP) erroneously docketed one of Mr. Khurana's emails as an administrative appeal, *see* Compl. ¶ 46, and, therefore, OIP's subsequent "decision on [the] alleged appeal" does not bear on the exhaustion analysis, either. NSD's final response of July 8, 2022 is the controlling response. *See* Tiernan Decl. ¶ 9.

[6] In his request for relief, Plaintiff asks for an order for NSD to "properly respond" to Mr. Khurana's FOIA request. Mot. at 23. Defendant does not concede that its initial response to Mr. Khurana's FOIA request on July 8, 2022 was improper but in any event submits that its revised response on August 12, 2022, and intent to provide the results of its processing of outstanding responsive records constitutes a "proper response" to the request.

such that any repeat of the actions in question is unlikely." *Am. Const. L. Found., Inc. v. Davidson*, 211 F.3d 1277 (10th Cir. 2000). The prudential ripeness doctrine is "rooted in the court's general discretion in creating prospective remedies, especially with regard to the government of the United States where considerations of comity for coordinate branches of government come into play." *Id.* (cleaned up).

Here, where Defendant has decided to provide the relief requested in Plaintiff's motion and the underlying dispute remains presently subject to this Court's review, Plaintiff's preliminary-injunction motion should be dismissed as moot.[7] *See, e.g., Hirt v. Unified Sch. Dist. No. 287*, No. 17-CV-02279-JAR-GLR, 2017 WL 4776956, at *5 (D. Kan. Oct. 23, 2017) (preliminary-injunction motion prudentially moot where plaintiff is "suffering no continuing adverse effects that would warrant the Court exercising its discretion to provide injunctive relief" and "the parties' underlying dispute remains subject to this Court's review"). Instead, NSD should respond to Plaintiff's Complaint in normal course. Should the case continue, Plaintiff can determine once NSD has completed processing the FOIA request whether to challenge NSD's search or any withholdings under FOIA, which the parties would brief on summary judgment.

**IV.      Plaintiff fails to show that he will suffer irreparable harm.**

"[A] showing of probable irreparable harm [absent relief] is the single most important

---

[7] Plaintiff's motion requests that NSD "produce the requested materials within ten (10) days of the Court's entry of an order granting the Motion." Mot. at 23. That particular request may be moot as well, depending on when this Court rules on Plaintiff's motion. In any event, Defendant cannot commit to and end-date for processing at this time given that the remaining potentially responsive records are currently being reviewed by another agency and Defendant has no authority to order the records to be returned for processing by a date certain. Tiernan Decl. ¶ 16. As Defendant explains *infra*, requiring Defendant to complete processing by an arbitrary deadline would be contrary to the public interest, since it would unduly hasten by which the government determine whether government information is statutorily protected from disclosure under FOIA.

prerequisite for the issuance of a preliminary injunction . . . ." *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (internal citation and quotation marks omitted). Irreparable harm "must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). "Purely speculative harm will not suffice." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009). The timing of Mr. Khurana's FOIA request, Plaintiff's apparent failure to request the same information in his underlying criminal proceedings, and his conclusory arguments founded on rank speculation all require denial of Plaintiff's preliminary-injunction motion for failure to establish irreparable harm absent relief.

To begin, the timing of the Mr. Khurana's FOIA request undermines the notion that irreparable harm is "certain, great, [and] actual." *Heideman*, 348 F.3d at 1189. Plaintiff was indicted more than a year ago and his trial date was set for September 2022 back in January of this year. *Barrack*, 1:21-cr-371, ECF No. 5; *id.*, Minute Entry of Jan. 5, 2022. Yet Mr. Khurana did not submit the underlying FOIA request until May 2022 and did not immediately request expedited processing or identify Mr. Barrack's connection to the request. Tiernan Decl. ¶ 5. Plaintiff's own delays undercut Plaintiff's effort to depict himself as suffering from irreparable harm absent emergency relief. *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1543 (10th Cir. 1994) ("[D]elay can undermine a claim of irreparable harm.").

Further, Plaintiff's assertion of irreparable harm is wholly unsupported by evidence and, indeed, consists of a mere paragraph of broad, conclusory, and speculative statements. First, Plaintiff asserts that the sought-after materials are "relevant to his defense at criminal trial." Mot. at 21. But as his counsel conceded at the August 5, 2022 status conference, Plaintiff did not request these materials through the discovery process accorded to him in his criminal proceedings, which

allows Plaintiff to seek any documents in the government's possession that are "material to preparing the defense." Fed. R. Cim. P. 16(a)(1)(E)(i). This failure belies the assertion that the sought-after information is so important to Plaintiff's criminal defense such that irreparable harm absent preliminary injunctive relief is "certain" and "great." *Heideman*, 348 F.3d at 1189.

Next, Plaintiff contends that "responsive information could inform the types of activity which trigger Section 951's notice requirement." Mot. at 21. However, besides being speculative, it is entirely unclear how a private party's decision to make a submission under § 951 would reveal anything at all about the types of activities triggering a § 951 notice requirement. Indeed, a private party may submit a § 951 notice out of an abundance of caution, and the mere fact of the submission would not reveal any information about whether it was actually required by § 951.

Finally, Plaintiff asserts that "the requested materials could provide high-level information about the DOJ's administration of the notice requirement and, coupled with more easily accessible prosecution data, the DOJ's enforcement of § 951." Mot. at 21. Again, Plaintiff does not explain in this speculative statement how decisions by third parties to submit notifications under § 951 could inform how *DOJ* administers the notice requirement. Plaintiff is being prosecuted for *failing* to submit a notice under § 951. *Barrack*, 1:21-cr-371. He has failed to sufficiently explain how submissions from individuals who *did* submit a notice under § 951 would exculpate him.

Moreover, NSD has already processed 16 of the 23 responsive pages located. Tiernan Decl. ¶ 13. Thus, "it is hard to conceive of any irreparable harm that [Plaintiff] will suffer from" having received an initial production before his preliminary injunction motion is even fully briefed. *See Elec. Priv. Info. Ctr.*, 15 F. Supp. 3d at 45. Finally, because Plaintiff is not guaranteed to receive any information from the outstanding records—since the responsive information may be deemed

exempt from disclosure under FOIA—Plaintiff's "contention that [he] will be irreparably harmed unless [he] receives the requested records quickly . . . is not only unproven, it is also fundamentally flawed because it ignores the well-established statutory FOIA process, which permits government agencies to withhold certain requested documents and to engage in subsequent litigation over them, without regard to the resulting production delay." *Id.* at 46.

**V.    The balance of equities and the public interest weigh against an injunction.**

The public interest and balance of the equities "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Neither the public interest nor the balance of equities favors Plaintiff's request for preliminary relief.

As an initial matter, granting a preliminary injunction would be tantamount to issuing an advisory opinion at this point, given Defendant's ongoing processing of Mr. Khurana's requested records. *See Jordan v. Sosa*, 654 F.3d 1012, 1030 (10th Cir. 2011); *Herb v. Pitcairn*, 324 U.S. 117, 126 (1945) (Courts are "not permitted to render an advisory opinion.").

And to the extent Plaintiff's request to order Defendant to disclose documents, not "as soon as practicable" as dictated by FOIA, 5 U.S.C. § 552(a)(6)(E)(iii), but rather on Plaintiff's preferred accelerated timetable, is still a live issue, such an order would risk disclosure of statutorily exempt material, harming the public interest.

The exemptions listed in 5 U.S.C. § 552(b) embody a judgment by Congress that the public interest would best be served by allowing agencies to withhold certain records. Indeed, Congress specifically recognized that, in certain cases, depending on the subject matter of the request, additional time would be required to ensure that the public's interest in preventing the public disclosure of these exempted documents was not compromised. *See* H.R. Rep. No. 104-795, at 23,

1996 U.S.C.C.A.N. at 3466 ("In underscoring the requirement that agencies respond to requests in a timely manner, the Committee does not intend to weaken any interests protected by the FOIA exemptions. Agencies processing some requests may need additional time to adequately review requested material to protect those exemption interests.").

That an order for an agency to rush its processing may harm the public interest through inadvertent disclosure is well-established. *See Daily Caller*, 152 F. Supp. 3d at 14 ("Requiring the agency to process and produce [requested] materials under an abbreviated deadline raises a significant risk of inadvertent disclosure of records properly subject to exemption under FOIA."); *Protect Democracy Project*, 263 F. Supp. 3d at 302 ("Imposing on Defendants an arbitrary deadline for processing would run the risk of overburdening them, and could even lead to the mistaken release of protected information."); *Baker v. CFPB*, 2018 WL 5723146, at *5 (D.D.C. Nov. 1, 2018) ("Ordering Defendant to process and release documents according to Plaintiff's timeline risks that, in its haste, Defendant will inadvertently release records which fall under a FOIA exception and Congress has decided should not be released."). The public interest weighs in favor of applying the normal, statutorily provided processing schedule to this FOIA request.

Finally, the public interest lies in the orderly processing of all FOIA requests, without favoring requesters with the resources to bring suit. By expediting this request outside of the normal FOIA processes, other requesters waiting in the queue for the processing of requests that are equally important to them are pushed further down the queue.

## VI.  This Court should not combine a hearing on Plaintiff's preliminary injunction motion with a trial on the merits.

Plaintiff requests, in the alternative, that this Court consolidate a hearing on his preliminary-injunction motion with a trial on the merits under Federal Rule of Civil Procedure

65(a)(2). Mot. at 22–23. This request must also be denied. Contrary to Plaintiff's contention, Plaintiff's claims do not "involve[] solely questions of law." Mot. at 23. Plaintiff's Complaint goes beyond the scope of his preliminary injunction motion by requesting that Plaintiff "is entitled to disclosure of the requested records." But for the court to determine the propriety of any withholdings NSD makes of information it deems exempt under FOIA, this Court should accord "substantial weight" to "an affidavit of an agency concerning the agency's determination[s]." 5 U.S.C. § 552(a)(4)(B). NSD has not completed processing Mr. Khurana's FOIA request and, thus, has not even made its full determination on what responsive information should be withheld and on what basis. Thus, consolidating a trial on the merits with a preliminary-injunction hearing would be inappropriate. Instead, this case should follow the normal course of FOIA litigation.

## CONCLUSION

For the foregoing reasons, Plaintiff's preliminary-injunction motion should be denied.

August 12, 2022                 Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

/s/ *Vinita B. Andrapalliyal*
Vinita B. Andrapalliyal
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Tel: (202) 305-0845
vinita.b.andrapalliyal@usdoj.gov

*Counsel for Defendant*

**CERTIFICATE OF SERVICE (CM/ECF)**

I certify that I served this motion on all counsel of record through the court's CM/ECF

filing system.

*/s/ Vinita B. Andrapalliyal*
Trial Attorney
U.S. Department of Justice
